UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FAFARD BUSINESS TRUST, HOWARD FAFARD, AS SHAREHOLDER OF THE FAFARD BUSINESS TRUST, and MADLYN FAFARD, AS SHAREHOLDER OF THE FAFARD BUSINESS TRUST<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA<br><br>Defendant | CIVIL ACTION<br>NO. 16-cv-40070-TSH |

**DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 55)**

**March 30, 2018**

**HILLMAN, D.J.**

### Background

This case arises out of a claim for coverage under the Wrap + Crime Policy (the "Policy") issued by Travelers Casualty and Surety Company of America ("Travelers") to Fafard Business Trust et al (collectively referred to as "Fafard"). Travelers made a payment to Fafard under the Policy as a result of an employee stealing money (the "Lussier Loss"). Approximately one year later, Fafard sought additional coverage under the Policy for the Lussier Loss, which Travelers denied giving rise to the present action.

1

This Court denied Travelers motion to dismiss after determining that the "*Claim*," as referred to in the Release and Assignment (the "Release"), could reasonably be interpreted as meaning Fafard's claim for the Lussier Loss as a whole or under Insuring Agreement A.1 and I of the Policy. Because the applicability of the Release is a threshold issue to be decided by the Court, limited discovery on this issue was permitted. After the discovery, Travelers filed the instant motion for summary judgment. The Court finds that the record before it establishes that Fafard submitted a claim under the entire Policy and that "*Claim*," as referred to in the Release, unequivocally means Fafard's request for coverage under the Policy, as a whole, for the Lussier Loss. I further find the Release to be enforceable barring the claims asserted in this entitling Travelers to summary judgment, as a matter of law.

## Facts

Travelers issued the Policy to Fafard, effective from November 1, 2013 through November 1, 2014. The Policy provided coverage under the following insuring agreements:

(1) Insuring Agreement A.1 (Employee Theft);
(2) Insuring Agreement A.2 (ERISA Fidelity);
(3) Insuring Agreement B (Forgery or Altercation);
(4) Insuring Agreement C (On Premises);
(5) Insuring Agreement D (In Transit);
(6) Insuring Agreement E (Money Orders and Counterfeit Money);
(7) Insuring Agreement F (Computer Crime);
(8) Insuring Agreement G (Funds Transfer Fraud);
(9) Insuring Agreement I (Claim Expense).

Insuring Agreements A through G were all subject to a single loss limit of $500,000. Insuring Agreement I (Claim Expense) was subject to a single loss limit in the amount of $25,000. Condition B.7 of the Policy stated:

> [Fafard] must transfer to [Travelers] all [Fafard's] rights of recovery against any person or organization for any loss [Fafard] sustained and for which [Travelers]

has paid or settled. [Fafard] must also do everything necessary to secure those

rights and do nothing after loss to impair them.

(Doc. No. 56-1 p. 30).

On February 19, 2014, Fafard discovered that an employee, Michael Lussier had stolen funds (the "Lussier Loss"). On February 25, 2014, Fafard filed notice of a claim under the Policy. The following day, Travelers acknowledged the notice of a claim resulting from the Lussier Loss, assigned Nelda Cronin ("Cronin") as the claim professional, and requested that they fill out and complete the proof of loss paperwork provided to them. Lewis LaClair, Fafard's risk management consultant, was the "authority and expert" on Fafard's insurance issues. (Doc. No. 56-1 p. 8 ¶¶ 2-8). Richard Terrill, Senior Vice President and Chief Financial Officer for Fafard, was responsible for all financial matters at the various Fafard entities. LaClair and Terrill discussed "steps [that] might be appropriate both to minimize the loss and to make sure [Fafard] didn't jeopardize a recovery." *Id*. LaClair then prepared the proof of loss paperwork with additional documents (collectively referred to as the "Partial Proof of Loss") with the information available at that time.

Fafard completed all sections of the Partial Proof of Loss, which included multiple sections: Section I (to be completed for employee dishonesty and theft); Section II (to be completed for all other claims); and Section III (to be completed for all claims). In Section II Fafard checked off the box for forgery and the box for claim expenses. The total loss stated on the Partial Proof of Loss was $1,447,480, however Fafard informed Travelers that this was not the total amount of money lost as a result of the Lussier Loss.[1] Fafard noted that it "submit[ted]

---

[1] It was later determined that the actual total amount of the Lussier Loss was approximately $1,604,612.

3

a [P]artial [P]roof of [L]oss concerning Michael R. Lussier's employee dishonesty and related losses. It also request[ed] a further 180 days to complete its investigation of this loss and to provide a final proof of loss" unless "Travelers agree[d] that [Fafard's] loss exceed[ed] the limits of insurance and that [Fafard is] not obligated to finish documenting all details of the loss." (Doc. No. 78-9, p.5). The Policy, along with one other one, was referenced in the Partial Proof of Loss as potentially applying to the Lussier Loss. Fafard requested "prompt review by Travelers and payment of the policy limits within 30 days." *Id*. Terrill signed and submitted the Partial Proof of Loss to Travelers on April 30, 2014.[2]

LaClair testified that he understood there to be a distinction between employee dishonesty and forgery at the time he filled out the Partial Proof of Loss. (Doc. No. 78-4, p. 11 at ¶¶ 6-19). He also stated that his goal was to maximize recovery from Travelers with respect to the loss. (Doc. No. 78-4, p. 12 at ¶¶ 7-24). After being asked, "and all of those documents taken together as you indicate made a claim for coverage for – any and all coverage to which Fafard Business Trust was entitled under the policy with respect to the loss?" LaClair replied, "[t]hat was the intent." (Doc. No. 78-4, p. 35 at ¶¶ 6-10).

On June 24, 2014, Cronin acknowledged receipt of Fafard's Partial Proof of Loss in a letter (the "June 2014 Letter). Traveler's informed Fafard that "[b]ased on our preliminary review of the Partial Proof of Loss and other documents provided thus far, we bring to your attention below certain provisions of the Policy which are pertinent in our effort to determine whether or not coverage applies under the Policy relative to your claim." (Doc. No. 56-9, p. 2). Fafard was also informed that "[t]he information you have provided Travelers to date does not

---

[2] It is undisputed that the Partial Proof of Loss was sent on April 30, 2014 however, it is dated April 17, 2014.

4

provide sufficient documentation to establish a covered loss at this time. Accordingly, we will rely on Fafard Business Trust to provide additional information and documentary evidence in support of the claim." (Doc. No. 56-9, p. 6). Travelers directed Fafard to Insuring Agreement A.1 (Employee Theft) informing them that Travelers had "quoted certain sections of the Policy for [Fafard's] convenience. Please understand that the entire policy is considered quoted herein by reference." *Id*. The remaining insuring agreement were also listed.

By August 2014, Travelers had recognized a claim under Insuring Agreement A.1 (Employee Dishonesty) and I (Claim Expenses). Prior to payment of the claim, Travelers requested that Fafard sign the Release. Both LaClair and Terrill reviewed the proposed release. Fafard subsequently requested that Travelers allow Fafard to control the recovery efforts up to $250,000 without reporting to Travelers. Travelers agreed and the Release was executed. Because of the importance of the language of the Release in this action, a large portion of it is quoted below:

> KNOW ALL MEN BY THESE PRESENTS that, the undersigned, Fafard Business Trust, for the sole consideration of Five hundred sixteen thousand nine hundred fifty four and 44/1000 ($516,954.44) Dollars, paid to it by Travelers Casualty and Surety Company of America (the "*Company*") under the provisions of Bond/Policy No. 105857344 (the "*Bond/Policy*"), the receipt and sufficiency of which is hereby acknowledged, does hereby release and forever discharge the Company, its parent, affiliates, subsidiaries, successors and assigns in connection with that certain claim described in that certain Proof of Loss dated April 30, 2014 and all additional documentation and information provided in support of said Proof of Loss (the "*Claim*").
>
> IN FURTHER CONSIDERATION of the aforesaid payment, the undersigned does hereby transfer, assign and set over to the Company all of its claims, rights, demands and causes of action against all persons, firms or corporations whomsoever arising out of or in any way connected with the Claim (the "*Claims and Rights*") to the extent of payment. The Company may pursue the Claims and Rights in its own name, or, if it so elects, in the name of the undersigned, but will defer to Fafard Business Trust for recovery efforts until a threshold recovery of $250,000 is reached. The undersigned affirms its understanding and agreement to be bound by the Bond/Policy provisions relation to recovery (including, without

5

> limitation, the order of recovery provisions) and to cooperate with the Company to the fullest extent possible to affect recovery. Fafard Business Trust has an Eight hundred eighty thousand four hundred eighty dollars ($880,480) loss in excess of the applicable Bond/Policy single loss limit of insurance and other insurance in excess of the Company's limits in the amount of $100,000.

(Doc. No. 78-2, p. 2).

Terrill signed the release on October 8, 2014. On October 27, 2014 Travelers paid Fafard $516,954.44 for the Lussier Loss, under Insuring Agreement A.1 and I of the Policy.

On September 23, 2015, Fafard submitted a demand for payment for the unrecovered loss suffered as a result of the Lussier Loss under the Policy (the "September 2015 Letter"). The September 2015 Letter specifically requested payment of $1,004,612 pursuant to Insuring Agreements B, F, and G. In addition, Fafard stated that "the Release describes the [P]artial [P]roof of [L]oss as presenting only a 'claim,' singular, rather than multiple claims made under multiple insuring agreements." (Doc. No. 56-16, p. 3). Travelers denied coverage because Exclusion D of the Policy barred such claims and informed Fafard that "[b]ecause we view the foregoing as dispositive of coverage for this matter, we have not raised other Policy terms, conditions, limitations or exclusions that may further limit or exclude coverage for this matter...Travelers' attention to this matter is subject to full and complete reservation of all rights, remedies and defenses under the Policy or otherwise." (Doc. No. 56-17, p. 3).

Fafard sent another demand letter to Travelers on January 7, 2016 (the "January 2016 Letter). The January 2016 raised the interpretation of Provision D as an issue because of its ambuguity. Fafard requested any information Travelers had where "other Travelers' insureds interpreted Exclusion D in a manner similar to the way that Fafard interprets it." (Doc. No.78-35, p. 3 at n.2). Travelers again denied coverage because "Exclusion D is unequivocal in its terms" and reserved "all rights, remedies and defenses under the Policy or otherwise." (Doc. No. 78-36,

6

p. 5). Fafard sent a third demand letter to Travelers on March 14, 2016 (the "March 2016 Letter"). Travelers again denied relying on Exclusion D.

Through independent research, Fafard became aware of a case out of Ohio where an insured had sued Travelers and Travelers asserted the Provision D defense. Senior United Stated District Judge Beckwith held in that case, that Provision D is ambiguous and may not be relied on to limit coverage to Insuring Agreement A.1. *Lykins Oil Co. v. Travelers Cas. & Sur. Co. of Am.*, No.1:08-cv-00546 (S.D Ohio Oct. 13, 2009). Lynda Jensen ("Jensen"), Cronin's supervisor, testified that she was aware of the Lykins decision before she responded to the March 2016 Letter. Travelers did not raise the Release as a defense for additional coverage until their motion to dismiss in this action.

## **Standard**

Summary judgment may be granted if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may establish that no genuine issue of material fact exists by citing to material in the record or showing that the "adverse party cannot produce admissible evidence to support the fact." *Id*. at 56(c)(1). The United States Supreme Court has held that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designated to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"In contract disputes, the court may construe clear and unambiguous contract terms as a matter of law." *Mason v. Telefunken Semiconductors Am., LLC*, 797 F.3d 33, 38 (1st Cir. 2015). If there is more than one reasonable interpretation on the face of the contract, the court may look

to extrinsic evidence to determine whether a genuine issue of material fact exists with regards to the ambiguity. *Id*. However, if the "evidence is 'so one-sided that no reasonable person could decide the contrary,' the meaning of the language becomes evidence" and summary judgment may be granted. *Id*. (quoting *Bos. Five Cents Sav. Bank v. Sec'y of Dep't of HUD*, 768 F.2d 5, 8 (1st Cir. 1985). "'[I]f the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation,' summary judgment may be appropriate even where intent is at issue." *DeNovellis v. Shalala*, 124 F.3d 298, 305-06 (1st Cir. 1997).

## Discussion

### *The Release*

*A. Consideration*

A release is a form of contract and should be interpreted as such. *Leblanc v. Friedman*, 438 Mass. 592, 596 (2003). It therefore, must also be supported by adequate consideration. *Piascik-Lambeth v. Textron Auto. Co*., D.N.H., No. CIV. 00-258-JD (Dec. 22, 2000). Consideration exists when there is "a bargained-for-exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor." *Hinchey v. NYNEX Corp*., 144 F.3d 134, 142 (1st Cir. 1998) (citing *Frankina v. First Nat'l Bank of Boston*, 801 F. Supp. 875, 886 (D. Mass. 1992)). The detriment need not be money but must be something that the party had the legal right to keep. *See Stagikas v. Saxon Mortg. Servs. Inc*., 795 F. Supp. 2d 129, 136 (D. Mass. 2011).

Regardless of whether or not recovery efforts were futile, Fafard bargained for the right to control recovery efforts and not have to notify Travelers for the first $250,000, which Travelers had a legal right to. (*See* Doc. No. 56-1 p. 30) (under the Policy, if Travelers makes a payment to the insured with regards to a particular loss, the insured must transfer all of its rights

8

of recovery for that loss to Travelers.)Therefore, in addition to the payment of $516,954.44, Travelers gave up a legal detriment and the Release is a valid contract supported by adequate consideration.

   B. *The Claim*

Fafard argues that the claim submitted through the Partial Proof of Loss refers to Fafard's claim for the Lussier Loss limited to Insuring Agreements A.1 and I of the Policy. It is Fafard's assertion that because of this, the "*Claim*" referred to in the Release, at the very least, may reasonably be interpreted as meaning their claim for the Lussier Loss under Insuring Agreement A.1 and I making the Release inapplicable for the claims asserted in this action. I disagree, finding that the record shows unequivocally that Fafard submitted the Partial Proof of Loss as a claim for the Lussier Loss under the entire Policy.

Fafard argues that although it did not state that it was limiting its request for relief under Insuring Agreement A.1, that was their intent. Fafard emphasizes the following to support its argument that the parties understood that Fafard submitted a claim limited to Insuring Agreement A.1 and I: (1) Travelers' failed to immediately assert the Release as a reason for denying Fafard's later claims stemming from the Lussier Loss under Insuring Agreements B, F.1, and G; (2) Travelers recognized and paid a claim for the full policy limit under Insuring Agreement A.1 and; (3) the parties distinguished between the amount paid for the claim ($500,000 plus claim expenses) and the total amount of money lost as a result of the Lussier Loss ($1,604,612). I find that these arguments are inconsistent with the record before me.

Fafard argues that Travelers failure to initially raise the Release as the basis for their denial of additional coverage evidences the fact that Fafard submitted and Travelers investigated a claim under Insuring Agreement A.1 and I only. This argument fails because Travelers did not

9

have a legal obligation to deny Fafard's later claim for coverage on one particular basis or another. In fact, Travelers reserved their right to raise additional defenses in the future. (See Docket No. 78, Exhibit 38)("Travelers attention to this matter is subject to a full and complete reservations of all rights, remedies and defenses under the Policy or otherwise including but not limited to the right to raise other Policy terms and conditions as defenses to coverage in the future as appropriate. Neither this letter, nor any actions by Travelers or any of its agents shall constitute or be deemed a waiver of any right or defense available to Travelers under the Policy or applicable law.").[3] While this may provide some support for Fafard's argument it is not sufficient to raise a reasonable alternate interpretation of the claim submitted considering remainder of the evidence within the record.

The fact that Fafard made a payment of $500,000 (plus claim expenses), the amount of the policy limit under Insuring Agreement A.1, establishes that Travelers recognized a claim under Insuring Agreement A.1. It does not establish that Travelers limited its investigation of Fafard's claim under Insuring Agreement A.1 or that Fafard requested Travelers to do so. Both Travelers employees involved with this claim, Cronin and Jensen, testified that Travelers investigated potential coverage for the claim asserted in the Partial Proof of Loss under the Policy in its entirety. (Doc. No 56-10 p. 5 at ¶ 1-13; Doc. No. 56-11 p. 6 at ¶ 3-15). Additionally, as discussed below in further detail, LaClair testified that it was his intent to get the maximum amount recovery Fafard was entitled to for the Lussier Loss under the Policy. (Doc. No. 56-2 p. 17 at ¶ 12-15). In the June 2014 Letter, Travelers informed Fafard that they had not

---

[3] Fafard points to Travelers internal guidelines which state that their claim professionals must document and explain why a claim is denied, either in whole or in part. However, because these are merely guidelines the fact that an employee failed to comply does not equate to establishing that the claim submitted was limited to Insuring Agreement A.1, especially when the remainder of the evidence contradicts such an assertion. (*See* Doc. No. 70-18).

yet "established a covered loss" and directed Fafard to Insuring Agreement A.1 as a provision for possible recovery. Travelers reiterated that although they had "quoted certain sections of the Policy for [Fafard's] convenience…the entire [P]olicy is considered quoted herein by reference." (Doc. No. 56-9, p. 6). It then went on to list all of the insuring agreements in the Policy. *Id*. Therefore, this argument is also inconsistent with the testimony and communication between Travelers and Fafard in the record. [4]

Additionally, the format and plain language of the Partial Proof of Loss conflicts with Fafard's assertion. Fafard completed the Partial Proof of Loss. This included filling out "SECTION I. (TO BE COMPLETED FOR EMPLOYEE DISHONESTY OR EMPLOYEE THEFT CLAIMS)…," "SECTION II (TO BE COMPLETED FOR ALL OTHER CLAIMS)…," and SECTION III <TO BE COMPLETED FOR ALL CLAIMS)." (Doc. No. 78-9, p. 2). Because this document is broken up into multiple sections, one for *employee theft and dishonesty*, one for *all other* claims, and one for *all* claims, and each section is clearly labeled, the fact that Fafard completed all three sections shows that their intent was to submit a claim under more than Insuring Agreement A.1, for employee theft.

Furthermore, in Section II, to be completed for claims *other than employee dishonesty and theft*, Fafard checked off "forgery" and "claim expenses." It is undisputed that Travelers recognized a claim for employee theft under Insuring Agreement A.1 and claim expenses under Insuring Agreement I but Travelers did not acknowledge a claim for forgery under Insuring

---

[4] Fafard points to the language in the June 2014 Letter stating that "[t]he Partial Proof of Loss describes an Employee Dishonesty or Employee Theft" as evidence that the claim was limited to Insuring Agreement A.1. However, reviewing the language of the letter in its entirety, it shows that at the time the letter was written Travelers viewed the incident described as one of employee dishonesty and theft based on the information provided to them. It does not suggest that Fafard's intent in submitting the Partial Proof of Loss was to limit recovery to Insuring Agreement A.1 or that Travelers limited its investigation of coverage for the Lussier Loss to Insuring Agreement.

11

Agreement B. This demonstrates that Fafard knew that the Partial Proof of Loss requested recovery under at least Insuring Agreement B in addition to Insuring Agreement A.1. Fafard was therefore on notice, at that time, that Travelers had recognized coverage for less than the claim requested. It is therefore implausible for Fafard to argue that at the time the Release was signed, which applies to "that certain claim described in that certain Proof of Loss dated April 30, 2014 and all additional documentation and information provided in support of said Proof of Loss (the "*Claim*")," they understood the *"Claim"* to refer to their request for recovery for the Lussier Loss under Insuring Agreement A.1 and I only. (Docket No. 78-2, p. 2).[5]

It is undisputed that Laclair, an experienced insurance professional who worked with Fafard and Terrill for many years, was authorized to act on Fafard's behalf and prepared the Partial Proof of Loss.[6] The express language of the Partial Proof of Loss states that Fafard "submit[ted] the partial proof of loss concerning Michael R. Lussier's *employee dishonesty and related losses.*" (Doc. No. 78-9, p.5). Also the term "policy limits" and not the singular, "policy limit," was used. *Id*. LaClair explained the reason for using the specific term "policy limits" was because he understood that the Policy had multiple limits. (Doc. No. 56-2, p. 20 at ¶¶ 4-17). LaClair testified that both his and Terrill's goal of the Partial Proof of Loss was to maximize recovery. He stated that it was his intent to seek coverage under the Policy for any amounts

---

[5] At the very most, the record is clear that Fafard limited its claim to Insuring Agreement A.1, B, and I. Therefore, Fafard was aware of potential additional coverage prior to signing the Release. However, they failed to address this issue at any points with Travelers. To allow them to now assert an argument that they are entitled to additional coverage that they were aware of prior to signing the Release defeats the purpose of having a release. The purpose of executing a release is to avoid the time and cost associated with litigation such as this one.

[6] *See Sabel v. Mead Johnson & Co.*, 737 F. Supp. 135, 138 (D. Mass. 1990) (agency relationship includes power of agent to bind principal by actions taken within scope of his agency); *see also Sorenson v. H&R Block, Inc.*, 107 Fed. Appx. 227, 231 (1st Cir. 2004).

Fafard was due, up to the full amount of the Lussier Loss.[7] (Doc. No. 56-2, p. 102 at ¶¶ 12-21; p. 107 at ¶¶ 8-14). This testimony supports the fact that Fafard's intent was to seek coverage under the entire Policy. Notably, this is consistent with the purpose of having insurance. If Fafard was trying to maximize recovery, as a reasonable insured would, it would illogical/counterproductive to assert a claim under one of multiple insuring agreements, limiting your potential for recovery.

Lastly, Fafard's argument that the parties distinguished between the amount of the claim ($500,000 plus claim expenses) and the total amount of the Lussier Loss ($1,604,612) fails. Fafard argues that based on the fact that Fafard requested the policy limits, that "the loss exceed[ed] the limits of insurance." Since Travelers paid the $500,000 (plus claim expenses), it follows that the "*Claim*" in the Release is for the $500,000 and not a claim for the Lussier Loss under the Policy. (Doc. No. 78-9 p.5). Generally, after an insured submits a claim the insurance company determines whether to cover all, part, or none of it. Many times the insurance company denies at least part of the claim. The fact that an insurance company pays a certain amount does not mean that that is the amount the insured requested as part of its claim. It does not follow that because Travelers paid $500,000, that the Partial Proof of Loss only requested that amount. In fact, had the parties intended for the "*Claim*" to refer to a claim under Insuring Agreement A.1 only, the execution of a release would be futile because it is clear that both parties understood that the policy limit on Insuring Agreement A.1 was $500,000, the total amount paid by Travelers to Fafard.[8]

---

[7] Fafard points to an email from LaClair to Fafard's in-house counsel to argue that it shows that LaClair filed a claim under Insuring Agreement A.1 only. However, this assertion is in direct conflict with LaClair's testimony regarding his intent at the time he submitted the Partial Proof of Loss. It is also inconsistent with the plain language of the Partial Proof of Loss.

[8] It should also be noted that in order to effectively communicative, the parties had to distinguish between the amounts of the claim that Travelers covered from the total loss suffered.

Finally, looking at the plain language of the Release, it is clear that the parties intended to "release and forever discharge" Travelers "in connection with" Fafard's claim for the Lussier Loss under the entire Policy. The Release specifically notes Fafard's excess loss in the amount of $880,480 (the difference between the total Lussier Loss (1,604,612) and the amount Travelers paid (500,000 plus claim expenses)). Additionally, as mentioned above, had the parties intended for the Release to discharge Travelers with regards to the claim asserted under Insuring Agreement A.1 only, it would appear that executing a release at all would be futile because Travelers paid the policy limit and Fafard had no potential additional coverage available.[9]

## Conclusion

For the foregoing reasons, I find that the only reasonable interpretation of the "Claim" in the Release is Fafard's claim for the Lussier Loss under the Policy, in its entirety and that the parties' intent at the time of the execution of the Release was to discharge Travelers obligations in connection with that claim. Furthermore, I find that the Release bars this action. The Defendants Motion for Summary Judgment (Docket No. 55) is ***granted***.

**SO ORDERED.**

                                                                        */s/ Timothy S. Hillman*
                                                                        **TIMOTHY S. HILLMAN**
                                                                        **DISTRICT JUDGE**

---

[9] Fafard's request that this Court proceed with counts II, III, and IV is denied because there are not sufficient facts to support a valid independent basis. *Pimental v. Wachovia Mortg. Corp.*, 411 F. Supp. 2d 32, 40 (D. Mass. 2006).